## BOYD & MACON v. McIVOR.

1. The court cannot instruct the jury as to the effect of evidence, which is doubtful or contradictory.
2. Where suspicion is cast upon a mercantile security, the holder must prove that he gave a valuable consideration for it, and acquired it before it was dishonored.

Writ of Error to the Circuit Court of Macon.

Assumpsit by the defendant in error, as indorsee of a note, made by the plaintiffs in error, on the 18th February, 1841, for the payment, on the first February 1842, to Geo. Goldthwaite, of $400, negotiable and payable at the Branch Bank of Montgomery.

The defendants pleaded *non-assumpsit*, payment, and set off.

Upon the trial, as appears from a bill of exceptions, the plaintiff offered the note, which was indorsed in blank, by

·the payee, without recourse, and without date. The defendant then proved by a witness, that in the month of February, 1841, at the request of one Robert H. Goldthwaite, he, the witness, visited a plantation known as the McIvor plantation, to value certain improvements on the plantation, for the purpose of ascertaining the amount to be paid to the said Boyd for the same, as stated by said Robert. It was further stated by the witness, that the initials, "R. H. G." on the face of the note, are in the hand-writing of Robert H. Goldthwaite. That at the time he valued the improvements R. H. Goldthwaite stated he was acting as the agent of Geo. Goldthwaite. That Boyd lived on and cultivated the McIvor land in 1841, and R. H. G. informed witness, at the time of the valuation, that Boyd was to be allowed the value of the improvements, not exceeding two hundred dollars, and they were valued at that sum, or more, and the result reported to R. H. G.

In the spring of 1842, the witness walked into the law office of George Goldthwaite, in the city of Montgomery, and discovered him and defendant, Boyd, making calculations, &c. Some warehouse receipts were turned over by Boyd, to Goldthwaite, and a calculation made of the amount. Witness heard Boyd tell Goldthwaite, you have calculated the cotton at one cent below the market value, and it overpays you some sixty dollars, pay me that sum. Goldthwaite replied, when the cotton is sold, we can settle the whole business. The witness understood from the parties, that the cotton was turned over, as collateral, to an indebtedness from Boyd to Goldthwaite, for the rent of the McIvor lands—but witness heard no mention of the amount, or form of the debt, or the amount of the cotton.

Defendant, Boyd, offered to deposit with the clerk of the court, subject to the order of the court, a sum of money sufficient to pay the note sued on, interest and costs, and to introduce his co-defendant, Macon, as a witness, stating that Macon was but a surety to the note; but on plaintiff's objection, the court rejected the proposition, and charged the jury, that if they believe all the evidence, they must find for the plaintiffs.

The charge of the court is now assigned as error.

W. P. CHILTON, for plaintiff in error.

The court had no power to decide upon the facts, and take the determination of the case from the jury. [Pistole v. Street, 5 Por. 64; Huff v. Cox, 2 Ala. 312; Vaughan v. Wood, 5 Ala. 305; Clemens v. Loggins, 1 Id. 622.]

The jury might have inferred from the proof, that George Goldthwaite was but the agent of McIvor, in taking the note, and if so, he could not, by making it payable to himself, and indorsing it without consideration to his principal, "without recourse," prevent the defendant from having the benefit of the payment, if the jury should believe that the cotton was intended to pay his debt.

By the rules of the law merchant, the indorsee must have the bill protested, to hold the drawer liable, unless he shows no funds in the hands of the drawee. This note has not been protested.

BELSER, contra. The legal presumption, in the absence of proof, is, that the note was indorsed before its maturity, and this shuts out the entire defence. [Pinkerston v. Badley, 8 Wend. 600; Webster v. Lee, 5 Mass. 329; Stewart v. Greenleaf, 3 Day, 311; Pond v. Lockwood, 8 Ala. 674.]

There was no proof of the agency of R. H. Goldthwaite, and his acts and declarations were not admissible. [1 Yeates R. 502; 1 W. C. C. R. 320.]

The charge of the court did not deprive the jury of any right. [Randolph v. Carlton, 8 Ala. 607; Smith v. Houston, Id. 737; Armstead v. Thomas, 9 Ala. 586; Sims v. Sims, 2 Ala. 117.]

ORMOND, J.—We do not consider it necessary to determine whether such a case as this, is one in which the court would compel the defendant to join in a demurrer to evidence, because, conceding it be such, the court erred in its judgment. We have made the preceding remarks, because it is by analogy to a demurrer to evidence only, that such a charge as the present can be sustained.

No question arises upon this writ of error, of the propriety of the admission of the declarations of R. H. Goldthwaite, that he was the agent of his brother. We must therefore

consider the fact as proved, that R. H. G. was authorized by George Goldthwaite to act as his agent, in ascertaining the value of some improvements made by the defendant on the McIvor plantation, which he had rented, and it was fully proved that these improvements amounted to $200, which sum the agent stated was to be a credit upon the amount to be paid as rent.

It is not shown how much the rent was, nor is it shown that this note was given for the rent, but it bears date about that period, is payable to G. Goldthwaite, who, from the proof, it appears assumed to act for McIvor, in relation to the rent of the plantation, as he delegated his brother to ascertain the amount of the improvements, which was to be allowed as a credit against the rent. The note in suit was once in the possession of R. H. G., as the initials of his name, in his hand-writing are found upon it. And this note is afterwards put in suit by McIvor, to whom it has been assigned *without date and without recourse*, by the payee. We will not say that this array of circumstances, unexplained, would compel a jury to infer that this note was given for the rent of the McIvor place, and was entitled to a discount of $200, for the improvements made by the tenant, but if the jury had so found, no court should have granted a new trial, and it follows that a court assuming to pass upon the effect of the evidence, was unauthorized to say, that a jury must have found for the defendant.

The facts proved in regard to the payment in the office of the payee of the note, shortly after its maturity, would be conclusive if the suit were now in the name of the payee, and the facts were not explained by him, so as to relieve the case from the natural and legal inference, that it was a payment of the note.

It is contended, that as the note is payable in bank, and therefore under our statute to be governed by the commercial law, and as the presumption arising from the blank indorsement is, that it was transferred before it was due, no evidence of set off or payment as against the payee is admissible. This is doubtless the general rule. Waiving for the present the consideration of the question, whether this

note was taken by the payee as the agent of McIvor, (if it be so found by the jury,) and whether in such a case a payment to the agent before notice of the transfer to the principal, would not be good, and considering it merely as a mercantile security, we think the circumstances attending the transaction, cast such a suspicion over it, as to require the indorsee to prove that he gave a valuable consideration for it, and acquired it before it was dishonored. [Thompson v. Armstrong, 7 Ala. 256.] In this aspect of the case, and under the proof as it was before the jury, the court should have instructed them to inquire, first, whether the defence of payment and set off were made out by the proof, and if so, that then the plaintiff could not recover without proving himself a *bona fide* holder.

It is not necessary to protest an inland bill of exchange to enable the holder to sue. The only effect of the protest is, to entitle the holder to damages. [Leigh & Co. v. Lightfoot, at the present term.] Let the judgment be reversed, and the cause remanded.